United States District Court
Southern District of Texas
**ENTERED**
May 18, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| VS. | § | CRIMINAL NO. 4:17-CR-00514-8 |
| | § | |
| PAULO JORGE DA COSTA CASQUEIRO | § | |
| MURTA (8), | § | |
| | § | |
| Defendant. | | |

## MEMORANDUM AND ORDER

## I.      INTRODUCTION

Before the Court is the defendant's, Paulo Jorge de Costa Casqueiro Murta, motion to suppress statements that he contends were involuntarily made under the guise or belief that he was protected by Portuguese law [DE 409]. The government has filed opposition to the motion [DE 417], and the matter is fully briefed.

The defendant raises the issue of "voluntariness" as he understands that Portuguese law applied to the circumstances of his interview and that to the extent that it did not, he was mistaken, and/or misled by federal agents and Portuguese authorities and; therefore, his participation in the interview was coercive and involuntary under Portuguese law, *Miranda* and the due process clause of the Fifth and Fourteenth Amendments as well as under Portuguese law.

In response, the government argues that there is no evidence that the United States ("federal") agents acted in a coercive manner, or otherwise improperly, to induce the defendant to give a statement.  Second, the government argues, even if the defendant's claims are supported by

the evidence, they fall far short of the type of conduct that the Supreme Court has held is necessary to require suppression based on involuntariness.

## II.      GENERAL AND PARTY FACTUAL ASSERTIONS

### A.      *General Facts*

The interview that the defendant complains about was arranged when the Department of Justice ("the government") forwarded a formal request for assistance to Portuguese official seeking to interview the defendant and other individuals who, allegedly, were not the subject or target of the government's ongoing investigation into a bribery, kickback and money laundering fraud scheme operating out of Venezuela.   The target of the investigation was, allegedly, PDVSA employees and officers.   The target of criminal conduct was PDVSA, the Venezuelan state-owned and state-controlled company and its subsidiaries and affiliates responsible for the exploration, production, refining, transportation and trade of Venezuela's oil and gas productions.

### B.      *The Defendant's Assertions and Conditions*

The defendant asserts that any statements of an incriminating nature were "mistakenly" made based on his understanding of Portugal law and the representations made by federal agents. He asserts that he was assured that he was not the target or subject of any Portuguese related crimes or crimes committed in the United States.  He was merely a "witness".  As a result, he spoke openly and fully to the federal agent with few, if any, exceptions.   More importantly he asserts, he misunderstood the consequences of speaking freely to the federal agents who, on several occasions, before, during and after giving his statement, assured him that he was merely a witness. At no time, he asserts, did the federal agents or the Portuguese officials, who presided over the undertaking, inform him that Article 58 of the Portuguese Code of Criminal Procedure did not apply to the interview.  And, while he does not assert that his statement(s) were the product of

police intimidation or physical restraint, he argues that he was intentionally misled by a more insidious technique – a bait and switch tactic.

      C.     *The Government's Assertions and Contentions*

The government asserts that it made no promise to the defendant in exchange for his statement. It asserts that the defendant was represented by his attorney at all times throughout the interview and could have objected to any question(s) that he deemed incriminating. Finally, the government asserts that the Fifth Circuit has already addressed the defendant's motion; hence, the issues raised are precluded from further review.

## III.    STATEMENT OF GOVERNING LAW

The *Miranda* warnings, generally, cover all the relevant Fifth Amendment protection regarding self-incrimination. In *Oregon v. Elstad*, 470 U.S. 298, 306 (1985), the Supreme Court says as much "'[T]he *Miranda* exclusion rule, services the Fifth Amendment [purposes] and sweeps more broadly than the Fifth Amendment itself. Hence, the Fifth Amendment does not prohibit all incriminating admissions "absent some officially coerced self-accusation, the Fifth Amendment privilege is not violated by even the most damning admissions." *United States v. Washington,* 431 U.S. 181, 187 (1979). Hence, the *Miranda* warnings are not the rights protected; instead they are measures [designed] to insure that the right against compulsory self-incrimination is protected. *See Michigan v. Tucker*, 417 U.S. 433, 444 (1974). Therefore, a Court's task is to examine, with particularity, the elements that *Miranda* fosters.

In spite of the government's arguments to the contrary, this Court must determine the voluntariness of the defendant's statement for purposes of the Fourteenth Amendment "voluntariness" standards. *Schneckloth v. Bustamante*, 412 U.S. 218, 223 (1973). Just as it may be argued, and rightfully so, that a defendant custodial statements – although inherently coercive

are yet admissible where *Miranda* warnings are given and the defendant freely foregoes those rights, it may also be argued that in a non-custodial circumstance where *Miranda* warnings are not given, the voluntariness of any statement must be examined to insure that right waived, other than by threat or violence against compulsory self-incrimination, are not violated.  The latter is the issue before the Court and, hence, the issue raised by the defendant and his implicate right to a hearing to test whether, under the Fourteenth Amendment, the defendant's interview was voluntary.

## IV.    DISCUSSION AND FINDINGS BASED ON TESTAMENTARY DOCUMENTS

The testimonial and documentary evidence reveal that the government had already indicted several individuals named in this case in August, 2017.  The defendant was not included.  On April 24, 2019, the government superseded its indictment, naming the defendant for the first time.  The indictment was filed under seal and remained so until September 4, 2019.  Between the original indictment in 2017, and the superseding indictment in 2019, the government, on March 5, 2018, issued a request for assistance to the Central Authority of Portugal, informing Portuguese authorities of its ongoing investigation and need for assistance.

Specifically, federal agents requested that Portuguese police interview the defendant and two other unindicted persons, none of whom who were the "subject" or "target" of their investigation.[1]  According to the official request, the government's subject matter concerned the defendant's knowledge of bank accounts and financial structure established to launder bribery proceeds.  In particular, the federal agents wanted the defendant, to explain his emails of June 10, 2012, identity the person listed in a March 21, 2013 email, and provide any knowledge of bribe payments to the several indicted and/or convicted individuals, as well as others not identified.

---

[1] The Court notes that the request from government officials to the Portuguese authorities informed that the targets of their investigation were PDVSA employers and officers.

Pursuant to the federal agents' request the Magistrate of the Public Prosecutor's Office of Portugal issued an Order directing the defendant to attend the inquiry. The defendant was warned by the notice that failure to attend would subject him " . . . to the payment of a sum [euros] as well as detention for the time strictly necessary to carry out the due diligence . . .", pursuant to Article 116.0, paragraphs 1 and 2 of the Code of Criminal Procedure.

On March 20, 2018, the defendant and his Portuguese counsel appeared for the interview as ordered. They were informed that the meeting was not related to any ongoing Portuguese investigation and that United States federal agents would conduct the interview. The federal agents informed the defendant that he was not the "subject" or "target" of their investigation, that they simply wanted his statement as a witness. They did not, therefore, inform him of his *Miranda* rights. They simply needed his "help". At several points during the inquiry, and at the conclusion of the interview, the defendant was informed again, by federal agents, that he was only a witness and was neither the subject nor the target of their investigation. Based on these assurances and repeated assurances by the Portuguese authorities and the federal agents and relying on Article 58 of the Portuguese Code of Criminal Procedures, and his counsel, the defendant submitted to the interview.

It is undisputed that Article 59(1) provides that during an interview, if a person who is not a defendant, status changes from witness to suspect or target, the authorities conducting the interview must suspend the interview and proceed to advise the interviewee of his rights under Article 58. It is also undisputed that the presiding Portuguese official did not stop the interview and the defendant was not advised of his *Miranda* rights pursuant to federal Constitution law at any time during the proceeding. Moreover, no one advised the defendant of a change in his status, but was reassured over and again by federal agents that he was "merely a witness".

## V.    DISCUSSION AND ANALYSIS

The defendant argues that he gave an interview pursuant to Article 58 of Portuguese Code of Criminal Procedure and based on the federal agents repeated assurances that he was providing only a "witness" statement for the benefit of their investigation of PDVSA officers and employers. His statement was to "help" their ongoing investigation.  The defendant argues that except for his "mistaken" belief, based on assurances he was not a target or subject of the federal agents' investigation, and the Portuguese law assurances, that the interview was to be conducted by Portuguese officials under Portuguese law(s), he would not have cooperated.  Hence, the issue of voluntariness, under the Fourteenth Amendment and the "due process" clause of the Fifth Amendment arise.  *See Schneckloth v. Bustamonte*, 412 U.S. 218, 223 (1973).

The Court is of the opinion that the issue of voluntariness considers and encompasses the usual *Miranda* analysis; but does not end the inquiry depending on the specific facts attendant to the environment surrounding the interview.  *See United States v. Swint*, 15 F.3d 286, 288-290 (3rd Cir. 1994); *compare United States v. Rogers*, 906 F.2d 189, 191-92 (5th Cir. 1990).  In this case, the Court concludes the following based on the undisputed evidence:

a)    the defendant was at all times a witness pursuant to Portuguese laws and custom; his status did not change; and, he was not advised of any change. The defendant's interview was requested and received by federal agents under the auspices of Portuguese law as is evident by the summoning order, and the fact that a Portuguese official was presiding over the interview process.  A citizen of Portugal has a right to rely upon the customs, laws and practices of Portugal when summoned by Portuguese authorities including the stated parameters of the inquiry;

b)    the federal agents knew or should have known the parameters of Portuguese law, having officially sought and secured the defendant's presence under Portuguese law.  In particular, they knew or should have known that a

citizen of Portugal, who provides a statement as "witness" under the supervision of Portuguese police official and under Portuguese law and in a circumstance where the citizen was advised that he was not the target or subject of any investigation, that citizen should be able to rely on those representations. Moreover, when the witness' answers either confirm the federal agent's investigation or contradicts it, the federal agent is not, therefore, permitted to change the rules under which he received the interview at his pleasure. In the instance, at bar, either during or after the interview, the federal agent abandoned the assurances given to the defendant without notice to the defendant or the Portuguese authorities.

The Court is of the opinion, and concludes, that the statement given by the Murta was not based on a "free and rational choice". *Rogers*, 906 F.2d at 190 (5th Cir. 1990). The undisputed statement of the defendant's counsel confirms this fact. According to the defendant's counsel, he was misled concerning his client's status and the legal ramifications of relying on federal agents to conform their conduct to Portuguese law, practice and custom and their own representations.

The government does not dispute that the defendant's counsel could rely on the formal notice to the defendant in that it did not indicate that the defendant was the subject or target of the United States investigation and could rest in the assurance that Portuguese laws and customs would apply. Moreover, counsel was not informed that the federal agents' reassurances to his client's status as a witness, was inconsequential and had changed. "Had anyone told us that Mr. Murta was more than just a witness, the entire meeting would have been different. *See* [Defendant's Exhibit 4, para. 5].

Under these circumstances, the Court determines that it was reasonable for the defendant and his counsel to conclude that the interview was taken under applicable Portuguese laws as was represented by the presiding Portuguese officials, and that the federal agents who conducted the interview were operating under Portuguese law. *See* [Defendant's Exhibits 1 and 2].

## V.        CONCLUSION

The Court determines that the interview of the defendant was mandated by Portuguese law, conducted under Portuguese authorities under Portuguese law and customs, by Portuguese judicial officials; that the defendant statement was the product of a "bait-and-switch" tactic by federal agents that violated Portuguese laws and the "voluntariness" mandate of the Fifth and Fourteenth Amendments to the federal Constitution.  Therefore, the statement must be suppressed and not permitted for use against the defendant in any United States criminal proceeding.

It is so Ordered.

SIGNED on May 18, 2023, at Houston, Texas.

Kenneth M. Hoyt
United States District Judge