**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. H-17-514-2** |
| | § | |
| **NERVIS GERARDO** | § | |
| **VILLALOBOS-CÁRDENAS** | § | |

**GOVERNMENT'S OPPOSITION TO**
**DEFENDANT'S MOTION FOR RECONSIDERATION**

The United States, by and through its attorneys, the Chief of the Fraud Section of the Criminal Division of the U.S. Department of Justice and the U.S. Attorney for the Southern District of Texas, hereby respectfully opposes Defendant Nervis Gerardo Villalobos Cárdenas' ("Villalobos" or the "Defendant") Motion for Reconsideration of the Court's Denial of Defendant's Motion for Discovery (DE 582) (the "Motion").

Defendant, who is currently in Spain—where he is awaiting extradition to the United States and facing multiple criminal investigations—is seeking reconsideration of the Court's previous order denying his motion for discovery. *See* Minute Entry, Dec. 4, 2023. Defendant has articulated no basis for why the Court should re-open its previous holding on the very same arguments he previously advanced. He has yet to appear before this Court, and the Government continues to have a legitimate interest in protecting the sensitive information contained within the discovery through the issuance of an enforceable protective order, such as the ones issued in connection with two of his co-defendants in this case (DE 54 and 211). These protective orders were necessary; and in the Defendant's case, any such protective order would be unenforceable since he has failed to subject himself to the jurisdiction of the Court. The Government is prepared to provide discovery

1

to Defendant immediately upon his extradition to the United States, his appearance before this Court in connection with this case, and the issuance of an enforceable protective order. In the interest of justice, for the sake of judicial economy, and for the reasons stated below, the government respectfully requests that the Court deny Defendant's Motion for Reconsideration.

## PROCEDURAL HISTORY

On August 23, 2017, Defendant, a Venezuelan citizen, was charged, along with four others, in a 20-count indictment based upon a multi-million-dollar bribery and money laundering scheme in which Venezuelan officials and U.S.-based suppliers of equipment and services exploited an energy and financial crisis in Venezuela to enrich themselves. These U.S.-based suppliers paid bribes to Venezuelan government officials employed by Petróleos de Venezuela S.A. (PDVSA), Venezuela's state-owned and state-controlled oil company, and its subsidiaries in exchange for assistance ensuring that the U.S.-based suppliers were paid on outstanding invoices and continued to obtain contracts with PDVSA. Defendant, who had previously been the Venezuelan Vice Minister of Energy, helped set up and facilitate this scheme. In that initial Indictment, Defendant was charged with conspiring to launder money in violation of Title 18, United States Code, Section 1956(h) (Count One); conspiring to violate the FCPA (Title 15, United States Code, Section 78dd-2), in violation of Title 18, United States Code, Section 371 (Count Two); and money laundering, in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2 (Count Four).

Defendant was arrested on these charges in Spain in October 2017. Two of his co-defendants, Cesar David Rincon Godoy and Luis Carlos de Leon Perez, were also arrested at that time, after which they waived extradition and appeared in the Southern District of Texas for their arraignments. (DE 29, 40). Both of those cases have now resolved.

2

On April 14, 2019, the Government filed a Superseding Indictment adding three new defendants, and modifying the indictment to, *inter alia*, include conduct by the Defendant in the United States and add a new FCPA object to Count 2, as well as renumber Count Four to Count Three. Shortly after his Indictment, the Government provided Defendant with a set of 99 key documents regarding his case.

Defendant initially consented to his extradition but remained in Spain due to pending related, but distinct, Spanish investigations into his conduct. In October 2018, as acknowledged in Defendant's Motion, Spain approved Defendant's temporary surrender to the United States to face the charges filed in this case under certain conditions. DE 582 at 1. Shortly thereafter, Defendant successfully appealed that surrender order, preventing his temporary extradition. *Id.* at 2. As a result, Defendant remains in Spain and has yet to make an appearance before this Court. In 2025, long after charges were filed in this case and while he was the subject of multiple ongoing investigations in Spain, Defendant sought and obtained Spanish citizenship. This further complicates his extradition process, as Spain does not typically extradite its citizens.

On August 15, 2023, Defendant filed a Motion for Discovery, arguing that (a) delaying discovery would prejudice his ability to rebut Government evidence and develop his defenses and deprive him of his right to a speedy trial; and (b) the right to discovery was triggered by the filing of the Indictment, not after arraignment.[1] (DE 532) The Government responded, noting that (a) Defendant is a "constructive-flight" fugitive, and his failure to submit himself to this Court's jurisdiction means he is not entitled to discovery; (b) Defendant already has the key evidence referenced in the Indictment; (c) there was no specificity to Defendant's claims of prejudice; and (d) providing discovery while Defendant remains outside the Court's jurisdiction would provide

---

[1] Defendant also argued that discovery about certain jurisdictional issues was relevant to a then-pending motion to dismiss (DE 261). That motion was denied in October 2023 (DE 542), and that argument is now moot.

3

him with a preview of the Government's case and invite him to obstruct without consequence or recourse. DE 552. Defendant addressed those arguments in a reply. DE 553.

The Court held a hearing on December 4, 2023, on several pending issues, including Defendant's discovery motion. During that hearing, Chief Judge Crane heard and considered the same arguments Defendant advances in his Motion for Reconsideration. Judge Crane held that "even though it might cause some delay in going to trial on your client," the Court would not permit discovery "until [Defendant] has been arraigned here by U.S. Court" and is "under [the Court's] control" to ensure the confidentiality of potentially sensitive discovery. DE 696 at 27.

On January 5, 2024, Defendant filed the instant Motion for Reconsideration. DE 582. On April 22, 2026, Magistrate Judge Bray issued an Order requiring the Government to respond to Defendant's Motion for Reconsideration. DE 684. The instant response follows.

## LEGAL STANDARD

"Although the Federal Rules of Criminal Procedure do not explicitly authorize motions for reconsideration, district courts possess continuing jurisdiction over criminal cases and are free to reconsider earlier decisions." *United States v. CITGO Petroleum Corp.*, 908 F. Supp. 2d 812, 820 (S.D. Tex. 2012). Because there is no "specific guidance from the Federal Rules of Criminal Procedure, courts should apply the standards set forth in the Federal Rules of Civil Procedure to motions for reconsideration." *Id.* (citing *United States v. Rollins*, 607 F.3d 500, 502 (7th Cir. 2010)). In the civil context, Rule 54(b) governs motions to reconsider interlocutory orders. *See United States v. E.I. Du Pont De Nemours & Co.*, 622 F. Supp. 3d 460, 467 (S.D. Tex. 2022) (using Rule 54(b) standard on a motion to reconsider order dismissing some, but not all, charges against a defendant).

4

Under the Rule 54(b) standard, "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). But "[t]he discretion to modify an interlocutory order does not eliminate the policy reasons behind discouraging motions for reconsideration which rehash the same arguments or, without justification, raise new arguments for the first time." *United States v. Mouton*, No. 4:20-CR-00501, 2024 WL 1545178, at *1 (S.D. Tex. Apr. 8, 2024) (internal quotation marks and citations omitted). "Accordingly, courts must exercise their broad discretion under Rule 54(b) sparingly to prevent the unnecessary reexamination of interlocutory orders with the resulting burdens, including expense and delay." *Id.* (internal quotation marks and citations omitted).

## ARGUMENT

### I.  Defendant's Motion Does Not Warrant Reconsideration.

Defendant's Motion repeats arguments the Court already considered and necessarily rejected when it denied the Defendant's initial Motion for Discovery. DE 696 at 12, 24-27 (finding Defendant was a fugitive despite understanding ongoing Spanish investigations prevented his appearance and holding that Defendant should not receive discovery until he was "under [the Court's] control" post-arraignment).

In his Motion to Reconsider, Defendant simply revisits those previous arguments, asserting (1) that he is not a fugitive, because he is being held in Spain involuntarily, and (2) he need not personally enter into a protective order (which would require him to submit himself to the jurisdiction of this Court) before receiving discovery, because his counsel is willing to do so in his stead. DE 582. Defendant advances no new arguments for why the Court should reverse its prior ruling determining he is, indeed, a fugitive, and does not—and cannot—provide the Court with

5

any assurance regarding how sensitive discovery will be safeguarded when he is free to disseminate it without consequence once his counsel shares relevant information in the course of preparing his defense. And, as discussed further below, the only change in Defendant's circumstances between his original motion and the present is that Defendant has now sought, and apparently obtained, Spanish citizenship, which raises the question of whether he will ever be extradited to answer the charges before this Court.

Reconsideration of the identical questions this Court has previously addressed would only lead to unnecessary expense and delay. Consequently, the Court should decline to exercise its discretion to reconsider its earlier order. *See United States v. Bruhl-Daniels*, 2020 WL 7632258, at *2 (S.D. Tex. Dec. 21, 2020) (declining to reconsider earlier order dismissing certain counts in an indictment because the motion "simply reasserted the same arguments that the court considered when it initially ruled").

## II.    Defendant is Not Entitled to Discovery Prior to His Appearance Before the District Court.

More than two years after his original Motion for Discovery, Defendant still has not submitted himself to the jurisdiction of this Court, and is still not entitled to discovery prior to his initial appearance.

This Court has already determined that Defendant is a fugitive and thus subject to the fugitive disentitlement doctrine. DE 696. The fugitive disentitlement doctrine is "an equitable one that a court exercises in its discretion." *Bright v. Holder*, 649 F.3d 397, 400 (5th Cir. 2011) (internal quotation marks and citation omitted). The doctrine is justified by several rationales, including preventing the waste of judicial resources involved in issuing advisory opinions that a defendant living abroad may choose to ignore if he does not like the outcome. *See United States*

6

*v. Herrera*, 534 F. Supp. 3d 727, 733 (S.D. Tex. 2021). The doctrine's "first and foremost . . . concern" is "the enforceability of [the court's] decisions." *Martin v. Mukasey*, 517 F.3d 1201, 1204 (10th Cir. 2008). Indeed, courts have been hesitant to expend their time and resources to decide pretrial motions where an unfavorable ruling will have no effect on the defendant. *See United States v. Oliveri*, 190 F. Supp. 2d 933, 936 (S.D. Tex. 2001).

"A fugitive is someone who has been offered process and refuses it." *United States v. Shalhoub*, 855 F.3d 1255, 1264 (11th Cir. 2017) (citing Black's Law Dictionary (10th ed. 2014)); *see also United States v. Martirossian*, 917 F.3d 883, 890 ("No one who is indicted and who declines to answer the charges has the right to be labeled a non-fugitive."). In the context of the fugitive disentitlement doctrine, courts have taken a broad view of the definition of a fugitive and have repeatedly held that a defendant who is outside the jurisdiction in which charges were brought may "constructively flee" by avoiding apprehension. *See, e.g.*, *Shalhoub*, 855 F.3d at 1263 (defendant who stayed in Saudi Arabia "to avoid apprehension" had constructively fled for the purposes of the fugitive disentitlement doctrine); *In re Kashamu*, 769 F.3d 490, 493 (7th Cir. 2014) (defendant who "didn't literally flee the United States, since he was never in the United States," was nonetheless "functionally" a fugitive). In this district, a defendant who "is aware of the charges pending against him . . . and is purposely absenting himself from the United States to avoid arrest and arraignment on the charges" is a fugitive. *Oliveri*, 190 F. Supp. 2d at 936 (citing *United States v. Catino*, 735 F.2d 718, 722 (2d Cir. 1984)). Indeed, "[a] defendant need not be present in and leave a jurisdiction to become a fugitive; the mere refusal to report for prosecution can constitute constructive flight." *Martirossian*, 917 F.3d at 890. And by contesting extradition to the United States to face charges, a defendant can show the requisite intent to avoid prosecution that courts have found sufficient to consider the defendant a fugitive. *See, e.g.*, *United States v. Vaulin*,

7

No. 16 CR 438-1, 2017 WL 3334861, at *5 (N.D. Ill. Aug. 4, 2017) (applying fugitive disentitlement doctrine where defendant remained in Poland and was "actively resisting extradition efforts").[2]

Defendant is physically located is Spain, where he has been the subject of a U.S. extradition request since late 2017. Defendant's assertion that he has taken no action to frustrate his extradition or distance himself from the United States and therefore does not qualify as a "fugitive" ignores key context. While Defendant initially consented to his extradition—knowing he was unlikely to be sent to the United States immediately due to ongoing investigations into his conduct in Spain—when the possibility of extradition became more concrete he took action to thwart it. As Defendant acknowledged in his Motion, in October 2018 the United States successfully requested that the Spanish authorities temporarily surrender Defendant so that he could face charges before this Court. Defendant appealed that temporary surrender, effectively preventing his extradition, which is now indefinitely paused as Defendant faces multiple ongoing investigation in Spain. In addition, Spanish authorities investigating Defendant's conduct have reported to the Government that Defendant obtained Spanish citizenship in 2025, which will further obstruct his extradition process even once the Spanish investigations are complete, as Spain does not typically extradite its own citizens. At this stage, it is simply not clear when, or even if, Defendant will ultimately be extradited to the United States.

---

[2] This Court should decline to follow the Second Circuit's decision in *United States v. Bescond*, 24 F.4th 759 (2d Cir. 2021). There, the Court held that a person who lived in a country that would not extradite them was not a fugitive, and the Second Circuit's decision was motivated, in part, by the extraterritoriality concerns raised by the defendant in her motion to dismiss (there, with respect to the Commodity Exchange Act). *Id.* at 771-72. Here, Defendant's Motion does not challenge the extraterritorial application of the charges against him, and the Fifth Circuit has already found that Defendant need not have taken any action in the United States as long as part of the conduct occurred in the United States. *United States v. Rafoi*, 60 F.4th 982, 998 (5th Cir. 2023).

Defendant's contention that he is similarly situated to his co-defendant, Rafael Ernesto Reiter Munoz ("Reiter"), who the Government conceded was not a fugitive because he was unable to leave Spain due to pending investigations against him, fails upon closer examination. Unlike Reiter, Defendant has actively obstructed his extradition by first challenging his temporary surrender, and then obtaining Spanish citizenship, and thus has actively worked to "absent" himself from the jurisdiction of the U.S. courts. *See, e.g.*, *United States v. Duff,* 931 F. Supp. 1306, 1312 (E.D. Va. 1996) (a defendant's intent to absent himself can be inferred from his failure to surrender to authorities once he learns of the charges).

In the alternative, Defendant also argues his motion should be granted because the Court considered his co-defendant Daisy Rafoi Bleuler's motion to dismiss despite her status as a fugitive. DE 582 at 3. Judge Hoyt initially granted Rafoi's motion based on a flawed understanding of the limits of this Court's jurisdiction, which the Fifth Circuit has since addressed and corrected, reversing the district court's dismissal. DE 255; *United States v. Rafoi*, 60 F.4th 982 (5th Cir. 2023). While the Fifth Circuit did not address the question of whether Rafoi's status as a fugitive should have prevented any consideration of the merits of her motion, the Government reiterates, as it did in its original briefing (DE 183, 186, 189), that a fugitive's motions should not be considered until they submit themselves to the jurisdiction of the court.

In short, given his status as a fugitive, Defendant is not entitled to discovery prior to his arraignment. As explained in our prior response (DE 552), which we incorporate here by reference, Courts have applied the fugitive disentitlement doctrine to ensure that defendants must submit to their jurisdiction before receiving discovery. *See United States v. Nabepanha*, 200 F.R.D. 480, 483 (S.D.Fl. 2001) (holding that a defendant who moved to a country with no extradition agreement prior to being charged was not entitled to discovery until he appeared in a U.S. court). Defendant

9

should not be granted an advantage that no other criminal defendant receives. He should not have discovery in a case before he appears in federal court – especially when it is not certain when or if he will ever make an appearance. The Government previously provided Defendant with a set of key documents, including financial records and electronic communications, that support the allegations in the Indictment. DE 532 at 1. Neither his original motion nor the instant Motion for Reconsideration articulate any credible basis for his claim that denying him additional discovery while he remains beyond this Court's reach will prejudice his ability to rebut that evidence, develop his defenses, or deprive him of his right to a speedy trial. Indeed, the Indictment and key documents he has had since 2018 provide more than enough information for Defendant and counsel to begin to prepare their defenses, and his mere desire for a benefit—discovery prior to even an initial appearance—is an insufficient basis to grant his Motion.

### III.     The Government has a legitimate interest in providing discovery to Defendant only after an enforceable protective order is in place.

In addition, at this stage of the case and certainly prior to Defendant's arraignment, the government would be prejudiced by the ordering of discovery. The discovery contains sensitive material, and several of targets in the case remain fugitives from justice. An improper disclosure of this information could jeopardize witness safety as well as the integrity of the case. This Court has previously agreed with the government and after careful consideration, found this same discovery material to be "confidential and law enforcement-sensitive information," and issued protective orders. (DE 54 and DE 211). The two defendants who received discovery in this case were subject to protective orders to mitigate the risk of improper use of this information.[3] A protective order is not yet an option for Defendant, since he is outside the United States and has

---

[3] *See United States v. Luis Carlos De Leon-Perez*, 4:17-CR-514, and *United States v. Paulo Jorge Da Costa Casquiero Murta*, 4:17-CR-514.

never subjected himself to the jurisdiction of this Court. At present, a protective order would be unenforceable against Defendant. In addition, providing discovery to Defendant while he remains outside the jurisdiction of the Court would give him a preview of the Government's case and invite him to obstruct without consequence or recourse by the Court. Even if Defendant's counsel were to agree to a protective order, they would undoubtedly be required to share information regarding the Government's case with their client, leading to the same result.

As noted above, the government is prepared to provide fulsome discovery to Defendant upon his extradition to the United States, appearance before this Court, and the issuance of an enforceable protective order. Defendant has offered no new argument or factual development that would justify this Court's revision of its previous decision denying Defendant discovery, and, accordingly, at this time, Defendant's Motion should be denied.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that Defendant's Motion for Reconsideration should be denied.

Respectfully submitted,

| | |
|---|---|
| LORINDA I. LARYEA | JOHN G.E. MARCK |
| CHIEF | ACTING U.S. ATTORNEY |
| Fraud Section | Southern District of Texas |
| Criminal Division | |
| United States Department of Justice | |
| | |
| */s/ Ligia Markman* | */s/ Robert S. Johnson* |
| LIGIA MARKMAN | ROBERT S. JOHNSON |
| TRIAL ATTORNEY | ASSISTANT UNITED STATES ATTORNEY |
| | |
| Fraud Section, Criminal Division | U.S. Attorney's Office |
| U.S. Department of Justice | Southern District of Texas |
| 1400 New York Avenue, N.W. | 1000 Louisiana, Ste. 2300 |
| Washington, D.C. 20530 | Houston, TX 77002 |
| Tel: (202) 794-2219 | Tel: (713) 567-9385 |

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 6, 2026, I filed the foregoing motion with the Clerk of the

Court using the ECF/CM system for filing and service on all counsel of record.

/s/ Ligia Markman
Ligia Markman
Trial Attorney
Fraud Section, Criminal Division
U.S. Department of Justice